OLIVER T. BURT, RESPONDENT, *v.* MARIA J. MYERS, AS EXECUTRIX, ETC., OF AUSTIN MYERS, DECEASED, APPELLANT.

37b 277
59ad153

*Statute of limitation — an action for conversion is barred in six years — ignorance by the plaintiff of his cause of action does not prevent the running of the statute.*

A corporation having become insolvent, certain real estate owned by it was sold by a receiver thereof to three persons (one of whom was the defendant's testator) who claimed to own all the outstanding bonds secured by certain mortgages upon such real estate. These bonds were delivered to and received by the receiver in payment for the real estate. The sale was made on October 31, 1867. The defendant's testator claimed to own seven-sixteenths of the bonds, so delivered to the receiver, and under the deed received a like interest in the real estate, which he subsequently sold to one of his co-grantees for $55,000. This action was commenced May 29, 1877, by the plaintiff, who claimed to be the owner of a portion of the bonds so delivered by the defendant's testator, to the receiver in payment for the land. The referee found that the bonds belonged to the plaintiff and were left in a bank for safe keeping; that the bank became insolvent, and that the bonds were received from its receiver by the defendant's testator on October 8, 1867, without the plaintiff's knowledge, consent or authority, and were by him used in the purchase of the said real estate.

*Held,* that the facts established a wrongful conversion of the bonds by the defendant's testator on October 8, 1867, and that the plaintiff's right of action therefor was barred by the six years' statute of limitation.

That the fact that the plaintiff did not learn that he had a cause of action until in April, 1870, did not prevent the running of the statute.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

April 1, 1856, a manufacturing corporation of the State of New Jersey mortgaged its real estate to secure an issue of fifty bonds for $1,000 each. Forty-eight of these bonds were issued. October 5, 1864, another manufacturing corporation of that State having succeeded to the property of the first corporation, mortgaged it to secure 100 bonds for $1,000 each and fifty bonds for $500 each. December 29, 1865, the corporation last mentioned became insolvent, and a receiver was appointed. At this time there were outstanding:

| | |
|---|---:|
| 48 of the first mortgage bonds | $48,000 |
| 61 of the second mortgage bonds for $1,000 each | 61,000 |
| 25 of the second mortgage bonds for $500 each | 12,500 |
| Total bonds outstanding | $121,500 |

October 31, 1867, the receiver of the insolvent corporation, pursuant to an order of the chancellor, sold and conveyed the mortgaged property to Juan C. De Muir, Austin Myers (defendant's testator) and Joseph C. Potts for $101,000 — receiving in payment the bonds above mentioned. The forty-eight first mortgage bonds were paid in full. The second mortgage bonds were paid *pro rata.* The purchasers presented the bonds to the receiver, and claimed to own them in the following proportions:

| | | |
|---|---:|---:|
| Juan C. DeMuir, seven-sixteenths | $53,156 | 25 |
| Austin Myers, seven sixteenths | 53,156 | 25 |
| Joseph C. Potts, two-sixteenths | 15,187 | 50 |
| | $121,500 | 00 |

It was recited in the deed that De Muir and Myers each acquired seven-sixteenths and Potts two-sixteenths of the property. In December, 1869, Myers sold his seven-sixteenths to De Muir for $55,000. November 9, 1870, Austin Myers died, and letters testamentary were issued to the defendant. The defendant and defendant's testator received the $55,000 from De Muir.

This action was begun May 29, 1877, by the service of a summons. June 24, 1877, a complaint was filed, alleging that the plaintiff was the owner of $30,000 of the bonds turned over by Myers to the receiver in payment for the seven-sixteenths interest

which he acquired; that Myers wrongfully converted the bonds to his own use, and a judgment was demanded for the damages sustained. September 21, 1877, an amended complaint was filed, in which it is alleged that defendant's testator took the bonds by virtue of a written agreement entered into March 29, 1867, between plaintiff, defendant's testator, Charles B. Sedgwick and others; which agreement Myers failed to perform, but, instead, applied the bonds in payment of the purchase-price of the mortgaged property, taking title to seven-sixteenths in his own name; and a judgment is demanded that the use of said bonds be held to constitute a conversion, that defendant be adjudged a trustee of the avails, that an accounting be had and the defendant be adjudged to pay the amount found due.

The defendant interposes, among other defenses, the statute of limitations as a bar. The referee finds that the plaintiff was the owner of $30,000 of the bonds used by Myers, and that they were left in the Central City Bank for safe keeping, which bank failed, and Charles B. Sedgwick was appointed as its receiver. The referee further finds that October 8, 1867, the defendant's testator received these bonds from Sedgwick "without the knowledge, consent or authority of the said plaintiff," and that, on the thirty-first of the same month, he applied them in part payment for the seven-sixteenths interest as above stated. The referee further finds that $31,040.40 is the proportionate amount due the plaintiff from defendant on account of the $55,000, received by defendant and defendant's testator from De Muir on account of the sale of the seven-sixteenths interest, and adds interest thereon from the date of the conveyance of Myers' seven-sixteenth to De Muir to the date of his report, $23,435.50, and orders judgment for $54,475.90, from which the defendant appeals.

*William G. Tracy,* for the appellant.

*Hiscock, Gifford & Doheny,* for the respondent.

FOLLETT, J. :

The referee does not find that defendant's testator took or applied the bonds pursuant to the contract of March 29, 1867, or pursuant to any agreement or understanding with the plaintiff. On the con-

trary, it is found that October 8, 1867, defendant's testator received the bonds from Sedgwick "without the knowledge, consent or authority of the said plaintiff," and that, on the thirty-first of the same month they were applied in part payment of the purchase-price of seven-sixteenths of the mortgaged property, and "that said plaintiff in no way co-operated with said Austin Myers in his taking and using said plaintiff's bonds" as aforesaid. The referee repudiates the theory that Myers took the bonds as a trustee under an express or implied trust, and the case is barren of evidence to sustain such a theory.

Assuming, as found, that the plaintiff owned the bonds when taken and applied by Myers, the facts found make a simple case of wrongful conversion without a shadow of right or authority, for which the plaintiff then (October, 1867) had a right of action without demanding their return. The fact that the cause of action remained undiscovered by the plaintiff until April, 1870, did not prevent the statute from running in the meantime. (*Leonard* v. *Pitney*, 5 Wend., 30; *Allen* v. *Mille*, 17 id., 202; *Humbert* v. *Trinity Church*, 24 id., 587; *Hunter* v. *Gibbons*, 1 H. & N., 459; Darb. & B. Lim., 24; Ang. Lim., § 185.) November 9, 1870, Austin Myers died, and thereafter (the date not appearing) letters testamentary were issued to the defendant. This action was begun May 29, 1877, and deducting eighteen months, as provided by 2 Revised Statutes (448, § 8, and Code Civ. Pro., § 443), the action was barred for nearly two years before it was commenced.

When property has been converted, the taker may, by an equitable action, be charged as a constructive trustee, and the proceeds recovered, so long as they can be traced and identified, or the damages may be recovered in a legal action. The only remedy to which the plaintiff was entitled (aside from a recovery of the specific bonds) was the recovery of a sum of money, at law or in equity, sufficient to compensate him for the loss of his bonds, which is the only remedy sought in this action, and is the precise and only relief granted by the judgment under consideration. Such a judgment might have been recovered at law and satisfied by an execution, as it appears that defendant's testator and his estate were at all times abundantly able to satisfy the damages claimed.

When there is a complete and concurrent remedy at law, the

lapse of time which bars the legal remedy also bars the equitable one. (_Humbert_ v. _Trinity Church_, 7 Paige, 195; affirmed, 24 Wend., 587; _Borst_ v. _Corey_, 15 N. Y., 505; _Rundle_ v. _Allison_, 34 id., 180; Ang. Lim., § 69.)

In a case like the one under consideration the wrong-doer does not become a trustee within the meaning of the statute of limitations. (_Decouche_ v. _Savetier_, 3 Johns. Ch., 190; _Kane_ v. _Bloodgood_, 7 Johns. Ch., 90, affirmed, 8 Cow., 360; Wood, Lim., 413, § 200; Darb. & B. Lim., 183.) We cannot do better than quote the rule as laid down in the authority last cited, which is amply supported by the cases cited.

" In applying, however, the general principle that time does not run between trustee and _cestui que trust_, it must always be borne in mind that a trust, to oust the operation of the statute of limitations, must be a direct trust constituted by the act of the parties, and not a constructive trust arising by implication of law. The person affected by the trust must be one in whom a confidence has been reposed, and who has thereby come into the enjoyment of property, not merely a wrong-doer in possession without title, whom a court of equity would make accountable to those entitled to the beneficial enjoyment; and, therefore, although it is a rule of equity that one who enters on an infant's estate is to be considered during the infant's minority as holding as his guardian or bailiff, yet if the infant delays six years after coming of age to file a bill for an account, the statute of limitations is a bar to such a suit as it would be to an action of account at common law." The statute of limitations is a bar to this action.

The judgment must be reversed, and it appearing that a new trial cannot avail the plaintiff, a final judgment is ordered in favor of the defendant, dismissing the complaint, with costs.

HARDIN, P. J., and VANN, J., concurred.

Judgment reversed, with costs, and judgment ordered for defendant, with costs.